1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MATTHEW LUCAS FRAZIER,

11              Plaintiff,                    No. CIV S-11-1351 GGH P

12        vs.

13   REDDING POLICE DEPT., et al.,

14              Defendants.            <u>ORDER</u>

15   _____/

16   <u>Introduction & Background</u>

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C.

18   § 1983.  The parties have consented to the jurisdiction of the undersigned.  Pending before the

19   court are a number of motions[1] filed by plaintiff: 1) motion by plaintiff for the court to provide

20   subpoena duces tecum forms to serve non-parties, filed on April 23, 2012; 2) plaintiff's May 4,

21   2012 motion for reconsideration of the court's order filed on April 23, 2012; 3) three motions by

22   plaintiff to compel discovery from non-parties, filed on May 9, 2012; 4) an incorrectly entitled

23   motion to compel further production of documents from defendants, filed on May 14, 2012, to

24   which defendants filed their response on May 31, 2012, after which plaintiff filed "an objection,"

25   _____

26   [1] The motions are listed chronologically in the introduction but are reorganized and
     addressed substantively below in a manner that the court finds to be more cohesive.

1

1  which the court will construe as a reply on June 14, 2012; 5) a second motion filed by plaintiff on

2  May 14, 2012, seeking reconsideration of the order filed on May 1, 2012, to which defendants

3  filed a response on May 31, 2012, after which plaintiff filed an "objection," on June 14, 2012,

4  which the court will construe as a reply.  It is necessary to review the background of this case in

5  order to parse and adjudicate plaintiff's largely repetitive but disorganized motions.

6          Plaintiff is reminded at the outset that in this case, as he has been previously

7  informed, the gravamen of his allegations for purposes of this civil rights action against

8  defendants Redding Police Department, Officer Jason Rhoads and Officer Rebecca Zufall is a

9  claim of excessive force.

10

11          What is at issue in the second amended complaint are plaintiff's
         allegations of the use of excessive force against him by defendants
12         Redding Police Department, Officer Jason Rhoads and Officer
         Zufall, Badge # 167.1   See Order, filed on October 17, 2011, pp.
         1-2.[2]  According to plaintiff, on September 26, 2010, plaintiff ran
13         to escape an assault by vigilantes who thought he was a rapist,
         child molester and/or ex-gangmember.  Second Amended
14         Complaint (SAC), p. 1.  As plaintiff ran, defendant Officer Rhoads
         jumped out of his car, pepper-sprayed plaintiff, forced him to lie on
15         the ground, kneeing him numerous times in the back and punching
         plaintiff in the face. Id., at 1-2.  Defendant Officer Zufall cuffed
16         plaintiff's right hand; defendant Rhoads pinned down plaintiff's
         left hand then drew him up from the ground roughly by the cuffs
17         and threw him in the back of defendant Zufall's car as plaintiff
         experienced a bout of asthma from the pepper spray.  Id., at 2.
18         When plaintiff arrived at the jail, he had to be transported to the
         hospital for his injuries to be treated before he could be medically
19         cleared for jail.  Id.

20  Order, filed on April 23, 2012, pp. 2-3.

21          Even earlier in this action, in directing service of this action upon defendants

22  Redding Police Department and Officers Rhoads and Zufall based on plaintiff's allegations of

23

24          [2] "Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due
    Process Clause, rather than under the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n.
25  16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  Because pretrial detainees' rights under the
    Fourteenth Amendment are comparable to prisoner's rights under the Eighth Amendment,
26  however, we apply the same standards. See Redman v. County of San Diego, 942 F.2d 1435,
    1441 (9th Cir.1991)."  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

excessive force, the court made clear that plaintiff's claims for money damages were barred to

the extent that he alleged due process violations in the conviction resulting from the September

26, 2010 arrest/incident giving rise to plaintiff's excessive force allegations against defendants.

In Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), an Indiana state prisoner brought a civil rights action under § 1983 for damages. Claiming that state and county officials violated his constitutional rights, he sought damages for improprieties in the investigation leading to his arrest, for the destruction of evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure"). Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not seek injunctive relief or release from custody. The United States Supreme Court affirmed the Court of Appeal's dismissal of the complaint and held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under 1983.

Heck, 512 U.S. at 486, 114 S. Ct. at 2372. The Court expressly held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged or reversed. Id.

Plaintiff's claims against defendant Officer Peggy Porter for writing a false police report to manufacture probable cause and his allegations regarding irregularities committed by Officer Williams in interviewing plaintiff and alleged inconsistencies between the police report by Williams and what was said in the interviews must be dismissed. Second Amended Complaint, pp. 3-8. Plaintiff refers to having been charged after the September 26, 2010 incident at issue herein. It is unclear whether he was returned to prison pursuant to a parole revocation or a new conviction. In either case, however, plaintiff does not make any showing that his present conviction has been reversed or invalidated. Therefore, he cannot pursue his money damages claims on the basis that he was denied due process by officers whose alleged misconduct led to

his conviction before he has pursued a successful challenge to the
proceedings leading to his current incarceration via a habeas corpus
petition pursuant to 28 U.S.C.§ 2254.

Order, filed on October 17, 2011, pp. 2-3.  Thus, plaintiff goes far afield when he attempts to

litigate claims that seek to undermine his conviction.

### *Plaintiff's Motion to Compel Further Production of Documents*

By order filed on May 1, 2012, plaintiff's motion to compel discovery was denied

as moot and plaintiff was directed to the extent that any of defendants' discovery responses or

production remained at issue to be specific in identifying a request or interrogatory to which

defendants have not adequately responded and to specifically set forth any deficiency in any of

the defendants' discovery responses or production by May 18, 2012.  Plaintiff has evidently made

an effort to do so in his filing of May 14, 2012 (docket # 61), but he has fallen short in a number

of respects, including failing to identify his response as a motion to compel (although he has not

been reserved in identifying his repetitive motions to compel production from nonparties as

such); moreover, plaintiff fails to provide the discovery requests themselves, or the responses he

finds deficient, in a lucid and coherent fashion.

Plaintiff concedes that he received a 911 and dispatch call sheet as well as the

internal affairs and police reports [concerning the subject incident].  Motion, docket # 61, p. 1.

Plaintiff, however, complains that because he did not receive recordings of the 911 and dispatch

calls (log no. L361), the record is incomplete.  Id. Plaintiff argues that there are two tapes which

he states are referenced in the police reports but that he only received one which he states he

cannot hear although plaintiff states he has a transcribed copy of the tape that had been "cleaned

up" by defendant Redding Police Department for plaintiff's criminal trial.  Id. at 2.

Plaintiff has also requested Shast.com [or Shascom] dispatch calls, evidently to

show defendants contacting plaintiff's parole officer after a parole hold was placed which

information would allegedly dispute what defendant Zufall said in response to an interrogatory

propounded by plaintiff.  Motion, dkt # 61, p. 2.  Plaintiff seeks Shastcom 911 records because

4

defendant Rhoads stated defendant Zufall contacted his parole agent eleven times.  Id.  He wants

cell phone records of defendant Zufall for Sept. 26, 2010, evidently to see if the phone number of

his parole agent, Randy Abney, is listed there.  Id.  Plaintiff believes that records he seeks,

including a variety of GPS records, will demonstrate that defendants have been misleading in

their reports, as to, for example, whether or not he was confrontational with police at the time of

his arrest.  Id., at 2-4.  Much of what plaintiff seeks, however, is irrelevant to this cause of action

for excessive force and evidences an interest in engaging in an inappropriate effort to re-litigate

his criminal conviction.  For example, plaintiff believes records will show that while Officer

Williams' report indicates plaintiff was read his Miranda rights it does not reflect entrapment and

outrageous police conduct.  Id., at 5.  Plaintiff goes on to assert that Shasta County Jail records

will show that plaintiff was given alcohol de-tox medication and was under the influence of those

drugs when he was interviewed on Sept. 28, 2010 (two days after the incident at issue).  Id. Such

information appears to have little bearing on what is relevant for the claims pending in this

action.  However, to that end it does appear that plaintiff requested incident reports involving

grievances against and investigations of defendants Rhoads and Zufall although he does not

make clear what the response to any such request was, if any.  Dkt. # 61, p. 3.

<em>Response by Defendants</em>

To the extent that plaintiff seeks further discovery from defendants regarding a

recording of 911 calls, defendants state that they have been informed that dispatch call recordings

are recycled periodically, thus any actual call recordings have been recycled and destroyed.

Response to plaintiff's multiple filings (docket # 62), pp. 1-2.   Defendants' counsel also

warrants that defendants have produced all printed dispatch records of dispatch calls on the night

of the subject incident and declares his belief that no defendants, including the Redding Police

Department, have possession of any 911 recordings.  Docket # 62-1, Declaration of Gary

Brickwood, ¶ 2.  Defendants refer to plaintiff's declaration that he had received the dispatch call

as part of the criminal trial procedure, in which case, defendants maintain, plaintiff has recorded

5

1    documents no longer available to the defendants.  Id., at 2.

2              To plaintiff's continued complaints of not having received a GPS record,

3    defendants assert that Redding Police Department patrol vehicles have no GPS devices and have

4    no GPS record available of either plaintiff's or the defendant officers' location during the subject

5    incident.  Docket # 62, p. 2; docket # 62-1, Brickwood Dec., ¶ 3.  As to plaintiff's complaints

6    against the state parole office for a failure by that office to respond to his request for a GPS

7    document, defendants respond that while they have no direct knowledge of the state parole GPS

8    system, counsel for defendants called State Parole Officer Randy Abney.  Id., Brickwood Dec., ¶

9    4.  Counsel learned that the state parole office does use a GPS system and maintains records of a

10   parolee's whereabouts based on the ankle bracelet such as plaintiff wore at the time as a parolee,

11   but that Mr. Abney was unaware of any process whereby that office could produce a video, film

12   or disk of plaintiff's activities.  Id.  Rather, Mr. Abney indicated that the parole office is limited

13   to a database he believes to be maintained in Texas which can illustrate a dot on a google earth

14   kind of map which show plaintiff's location at different times on a particular day.  Docket # 62,

15   pp. 2-3; Brickwood Dec., ¶ 4.  According to defendants, this overhead view does not provide a

16   photograph of activities and would not show the location of police officers and patrol cars.  Id., at

17   3.

18              Mr. Abney advised me that the local parole office could enter a time on
               a given day and as a result the computer that they utilize would
19             show a point of location for Mr. FRAZIER.  Attached and
               incorporated into the Declaration of Gary Brickwood is an
20             illustration of the map sent to me by Parole Agent Abney.
               Mr. Abney explained that the green dots on the map are the
21             location of Mr. FRAZIER at different times on September 26, 2010
               at approximately 6:10 p.m.  For reference the map shows local
22             Highway 273.  The gas station where the altercation which is the
               subject of this lawsuit took place is on the right side of the map.  In
23             general, the map discloses that Mr. FRAZIER was located in the
               parking area of the Americana Hotel and then began to move to the
24             gas station on Pine Street where the incident took place.

25   Docket # 62, p. 3.

26   \\\\\

1        Thus, defendants conclude, the most the parole GPS system would reveal would

2  be plaintiff's presence at the gas station, which does not appear to be at issue, but would not

3  depict the locations of police officers while plaintiff was present at the gas station. Id., at 3;

4  Brickwood Dec., ¶ 5.

5        *Plaintiff's Reply*

6        In his confusing objection to defendants' response, plaintiff contends that his

7  Fourth Amendment rights have been violated by defendants' counsel having failed to obtain the

8  GPS record by way of a subpoena. Reply, Dkt # 63, p. 1. Plaintiff also avers that Parole Officer

9  Abney is the officer he has alleged (in a previous incarnation of this complaint) who

10  "manufactured a crime" resulting in plaintiff's conviction. Id. Plaintiff continues to insist that

11  defendant Redding Police Department should have GPS tracks and  logs and 911 records not yet

12  produced and that the logs that have been produced indicate discrepancies between arrival times

13  of some officers and the GPS noted time of his arrest. Id., at 2. Plaintiff continues to complain

14  that there are three settings of the GPS record, "roads, aerial and bird's-eye view," and that the

15  only one produced has been the aerial view. Id., at 3. Plaintiff insists that what he needs is

16  production of the bird's eye view. Id., at 4.

17        *Discussion*

18        The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad. Discovery may be

19  obtained as to "any nonprivileged matter that is relevant to any party's claim or defense—

20  including the existence, description, nature, custody, condition and location of any documents or

21  other tangible things and the identity and location of persons who know of any discoverable

22  matter." Id. Discovery may be sought of relevant information not admissible at trial "if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24  The court, however, may limit discovery if it "....is unreasonably cumulative or duplicative," or

25  can be obtained from another source "that is more convenient, less burdensome, or less

26  expensive"; or if the party who seeks discovery "has had ample opportunity to obtain the

1    information by discovery...."; or if the proposed discovery is overly burdensome.  Fed. R. Civ. P.

2    26(b)(2)(C)(I), (ii) and (iii).

3               Much of what plaintiff asks for either does not appear to be within the possession,

4    custody or control of the defendants and/or does not appear to be reasonably calculated to lead to

5    the discovery of admissible evidence.  However, as noted, although not clearly set forth by

6    plaintiff either as to the request or any response, that plaintiff requested incident reports

7    involving any grievance against and investigations of defendants Rhoads and Zufall.  The court

8    will order defendants to produce to plaintiff, to the extent such documents exist and to the extent

9    they have not done so,  copies of any grievances or complaints or lawsuits against these

10    defendants alleging excessive force, as well as any internal investigations and disciplinary actions

11    included in their personnel files related to claims of excessive force.  As the Redding Police

12    Department is a defendant, the court will order the same from Officer Porter as well, whom

13    plaintiff alleges was "dishonest" in her report of the subject arrest, although not from Officer

14    Williams, who was evidently not involved in the Sept. 26th 2010 arrest.  Defendants should

15    redact personal information such as social security numbers, birthdates and addresses from such

16    material and, to the degree that they have other privacy or confidentiality concerns, may submit a

17    draft protective order within fourteen (14) days.  Once a protective order is approved and issued,

18    defendants must provide the documentation to plaintiff within twenty-one (21) days.  Plaintiff's

19    motion to compel as to any other production from defendants will be denied.

20    <u>Plaintiff's Motion for Subpoenas Duces Tecum</u>

21               In a motion for the court to issue or to "sign and seal" six subpoena duces tecum

22    forms, plaintiff seeks to direct subpoenas to entities he identifies as non-parties: Redding Parole

23    Unit, the Shasta County Public Defender's Office, the Shasta County Sheriff's Dept., the

24    Redding Police Dept., "Shascom 9-1-1," and Pleasant Valley State Prison,  seeking the records

25    and information he contends dispute information provided to him by defendants' counsel.  Of

26    course, the Redding Police Department is a defendant in this action.  In order to receive the

1  documents he seeks from a defendant, plaintiff need only simply have served requests for

2  production of documents under Fed. R. Civ. P. 34 (a), which would signify that he is seeking

3  service of five subpoenas duces tecum on five non-parties and one party.

4          Presumably the subpoena he wishes to have issued upon Pleasant Valley State

5  Prison is an effort to obtain a CDCR[3] recording of his location by way of the GPS device he had

6  as a parolee on the date of the incident at issue herein and that that information will demonstrate

7  that defendant police have lied about what they did and did not do when he was violated on

8  parole.  Docket # 55.  Plaintiff states that he was granted part of the record for the day at issue,

9  September 26, 2010, but he wants the "bird's eye view," which can show where and with whom

10  he was walking.  Id.  Plaintiff does not, however, adequately demonstrate the relevance of the

11  circumstances of his having been violated on parole to what is at issue in this action.  As this

12  court has stated before, plaintiff's claim in this case is that he was subjected to excessive force

13  when he was arrested.  What is distinctly not in issue, however, is the basis for the arrest itself.

14  Plaintiff must not conflate his arguments contesting the validity of the criminal charge and

15  subsequent conviction against him with the actions of the defendants at issue in this civil rights

16  complaint.  Moreover, plaintiff was told correctly that any subpoena he wished to issue must

17  conform to Rule 45 of the Federal Rules of Civil Procedure.

18          Plaintiff contends that his GPS track and parole reports refute police reports, that

19  "the GPS is on a computer" with "Bird eye view capability," along with a report of the incident

20  by an I.S.U. Agent named R. Marquez.  Docket # 47, p. 2.  Plaintiff goes on to assert the

21  existence of various GPS records.  Plaintiff indicates that he has some documentation, not

22  clarifying to the court's satisfaction what precisely is in dispute and how this information will

23  assist him in this action.  By order filed on December 2, 2011, the court, inter alia, directed the

24  Clerk of the Court to provide plaintiff with a blank subpoena form.  Later, in an order filed on

25

26          [3] California Department of Corrections and Rehabilitation.

1  February 15, 2012, the court directed the Clerk to provide plaintiff two blank subpoena forms in

2  response to his then pending request.  At the time of the court's provision of a subpoena form on

3  December 2, 2011, plaintiff was informed that nonparties could not be compelled to provide

4  plaintiff with information but could be ordered, if requested properly, to produce documents.

5  <u>Order</u>, filed on 12/02/11, p. 2, quoting <u>Roberts v. Paulson</u>, 2010 WL 2632102 *1 (N.D. Cal.

6  2010).

7         Plaintiff may compel a person who is not a party to this
   action to produce documents for inspection and copying pursuant
8         to a subpoena duces tecum. <u>See</u> Fed. R. Civ. P. 34(c), 45(a). In
   order to do so, plaintiff must fill out subpoena forms and ensure
9         that each person is served with the subpoena by a non-party.
   Plaintiff must tender to each person "the fees for one day's
10        attendance and the mileage allowed by law."  Fed R. Civ. P. 45(b)
   (1). The current requisite fee for each person is forty dollars per
11        day, see 28 U.S.C. § 1821(b), and cannot be waived for a plaintiff
   proceeding in forma pauperis. <u>See</u> <u>Dixon v. Ylst</u>, 990 F.2d 478,
12        480 (9th Cir.1993). These requirements do not apply to a request
   for production of documents from one party on any other party.
13        <u>See</u> Fed. R. Civ. P. 34(a)."

14 <u>Id.</u>

15        Plaintiff was also told in the Dec. 2nd order, that the court would consider

16 directing the U.S. Marshal to serve a subpoena duces tecum on a non-party if he were to submit

17 to the court both a completed subpoena form and the required fee, with the form describing the

18 items to be produced "with reasonable particularity" and designating "a reasonable time, place

19 and manner for their production."  <u>Id</u>.  The forms plaintiff returned in his filing on May 14, 2012,

20 were directed to the Redding Parole Unit, the Shasta County Public Defender's Office, the Shasta

21 County Sheriff's Department, Shascom 911,[4] and it does appear that the Clerk of the Court failed

22 to sign the blank subpoena forms in conformance with Fed. R. Civ. P. 45(a)(3), which states in

23 relevant part, "[t]he clerk must issue a subpoena, signed but otherwise in blank, to a party who

24

25     [4] The court disregards the subpoena duces tecum directed to defendant Redding Police
   Department.  As stated earlier, requests for production of documents are appropriate with respect
26 to a party.

1  requests it."  Therefore, new subpoenas, blank but signed by the Clerk of the Court, will issue to

2  plaintiff.

3  Plaintiff's Motions to Compel Non-Parties

4                              *First Motion to Compel*

5                Plaintiff contends that he has received no response or objections to the subpoena

6  dated March 9, 2012, he states that he served upon the Shasta County Jail seeking all records

7  from September 26, 2010 to the present of plaintiff's intake at the jail and of requests for medical

8  treatment, and of any medical treatment, any medical evaluation and medical records regarding

9  any evaluation and treatment he received at Shasta County Jail.  Docket # 57, pp. 1, 3.  Also

10 contained in the motion is a copy of plaintiff's subpoena, also dated March 9, 2012, seeking

11 "photos of the incident of Sept. 26, 2010 case # F-10-6928 of" plaintiff taken on Sept. 28, 2010

12 by the public defender's office as well as "any and all documents about this incident involving

13 plaintiff...."  There is no evidence that the subpoena was properly served and therefore, the

14 motion must be denied.

15                  *Second Motion to Compel & Motion for Subpoena Duces Tecum*

16                Plaintiff largely reiterates his often repeated request for records of  "GPS tracks

17 that show the incident and where plaintiff went that day."  Docket # 58, p. 1.  He includes a copy

18 of a subpoena he has dated March 9, 2012, directed to "Redding Parole Unit," seeking

19 production of "electronically stored information as follows" plaintiff's "G.P.S. tracks" of

20 "violation reports" of Sept. 26, 2010 and all memoranda and records of the incident that day

21 including "G.P.S. recordings on Bird's-eye view that shows the incident."  Id., at 4.  Plaintiff

22 includes the response from the Litigation Coordinator of Division of Adult Parole Operations,

23 Region 1, wherein it is stated that the subpoena is being objected to, as had a prior subpoena sent

24 by plaintiff, on the ground that it "is invalid in that it is not signed by an attorney, a judge or a

25 clerk of the court as required by Rule 45(a)(3) of the Federal Rules of Civil Procedure."  Id., at 6.

26 Once again, there is no indication that proper service of the subpoena was effected, inasmuch as

1    it was not returned to the court for service with the required fee.  To the extent, however, that the

2    sole objection is that the subpoena form was not properly signed by the Clerk prior to issuance of

3    the subpoena form to plaintiff, he will be provided with a new subpoena.

4                                    _Third Motion to Compel_

5                  By this motion, plaintiff asks the court to compel non-party Shasta County Public

6    Defender's Office to provide documents, where he contends he sent a subpoena on May 9, 2012

7    (by which he evidently meant March 9th), in response to which he has received neither

8    production or objection.  Docket # 59.  Plaintiff apparently intended to attach to this motion the

9    subpoena directed to the public defender's office included with the first motion to compel above.

10   Plaintiff states "the tape has been clean[e]d up."  Id.   But he also mentions a tape that he has

11   received from the defendant as well as a transcript.  Id.  However, it is not at all clear what the

12   tape or transcript references.

13                 Plaintiff goes on to refer to 911 calls and his parole hearing tape and the pictures

14   taken on Sept. 28, 2010, by the public defender's office investigator.  Once again there does not

15   appear to have been appropriate service of a non-party subpoena in accordance with Fed. R. Civ.

16   P. 45(b)(1).

17                                    _Further Discussion_

18   Federal Rule of Civil Procedure 45(a)(2) provides: "A subpoena
     must issue ... for attendance at a hearing or trial, from the court for
19   the district where the hearing or trial is to be held...."
     Fed.R.Civ.P. 45(a)(2).  Federal Rule of Civil Procedure 45(a)(3)
20   provides: "The clerk must issue a subpoena, signed but otherwise
     in blank, to a party who requests it.  That party must complete it
21   before service."  Fed.R.Civ.P. 45(a)(3).  Federal Rule of Civil
     Procedure 45(b)(1) service of a subpoena made by a person who is
22   18 years or older and is not a party to the case.  The Court is
     required to "issue and serve all process and perform all such
23   duties" for a plaintiff proceeding in forma pauperis. 28
     U.S.C.1915(d).  Plaintiff, however, is responsible for paying all
24   fees and costs associated with the subpoenas. See _Tedder v. Odel_,
     890 F.2d 210, 211, 212 (9th Cir.1989).  For example, if a subpoena
25   requires a person's attendance, fees for one day's attendance and
     mileage must be tendered concurrent with service.  Fed.R.Civ.P.
26   45(b)(1); see also 28 U.S.C. § 1821. These fees are not waived

                                          12

1    based on Plaintiff's in forma pauperis status.  *Tedder*, 890 F.2d at
     211-12.

2

3    Garcia v. Grimm, 2012 WL 216565 * 4 (S.D. Cal. Jan. 23, 2012).

4              [T]he court's authorization of a subpoena duces tecum requested
               by an in forma pauperis plaintiff is subject to limitations. Because
5              personal service of a subpoena duces tecum is required, Federal
               Rule of Civil Procedure 45(b), "[d]irecting the Marshal's Office to
6              expend its resources personally serving a subpoena is not taken
               lightly by the court," *Austin v. Winett*, 2008 WL 5213414, *1
7              (E.D.Cal.2008); 28 U.S.C. § 1915(d). Limitations include the
               relevance of the information sought as well as the burden and
8              expense to the non-party in providing the requested information.
               Fed.R.Civ.P. 26, 45. A motion for issuance of a subpoena duces
9              tecum should be supported by clear identification of the documents
               sought and a showing that the records are obtainable only through
10             the identified third party. See, e.g., *Davis v. Ramen*, 2010 WL
               1948560, *1 (E.D.Cal.2010); *Williams v. Adams*, 2010 WL
11             148703, *1 (E.D.Cal.2010). The "Federal Rules of Civil Procedure
               were not intended to burden a non-party with a duty to suffer
12             excessive or unusual expenses in order to comply with a subpoena
               duces tecum." *Badman v. Stark,* 139 F.R.D. 601, 605
13             (M.D.Pa.1991); see also, *United States v. Columbia Broadcasting
               System, Inc.*, 666 F.2d 364 (9th Cir.1982) (court may award costs
14             of compliance with subpoena to non-party).  Non-parties are
               "entitled to have the benefit of this Court's vigilance" in
15             considering these factors. *Badman*, 139 F.R.D. at 605.

16   Alexander v. CDCR, 2010 WL 5114931 * 3 (E.D. Cal. Dec. 9, 2010); see also, Heilman v.

17   Lyons, 2010 WL 5168871 *1 (E.D. Cal. Dec. 13, 2010).  Plaintiff appears to believe that various

18   entities have access to a bird's eye view of where he and the defendants were at or around the

19   time of the arrest; however, it is not at all clear that any such evidence exists at this time (or

20   ever[5]) whether or not it was available to him at his criminal trial.  As to his request regarding his

21   medical condition on September 26, 2010, and the medical treatment he received while at Shasta

22   County Jail, there is some relevance with respect to any injuries he may have suffered as a result

23

24        [5]The undersigned is familiar with GPS devices used by law enforcement insofar as he has
     authorized many GPS tracking requests in a criminal context, and has ordered a GPS monitor for
25   persons on pretrial release.  None, to the undersigned's knowledge, follow a person around
     recording a video or picture snapshot of every event in his life.  Law enforcement might be quite
26   interested in such an Orwellian "1984" device, if one existed and could be utilized.

1   of the subject incident.  Plaintiff must return to the court a subpoena duces tecum, within

2   fourteen (14) days,  properly filled out directed to Shasta County Jail seeking such records from

3   September 26, 2010 to the present of plaintiff's intake at the jail and of requests for medical

4   treatment, and of any medical treatment, any medical evaluation and medical records regarding

5   any evaluation and treatment he received at Shasta County Jail.

6           Plaintiff may also seek any records that he insists are within the possession,

7   custody or control of the Shasta County Public Defender's office regarding material produced at

8   his criminal trial involving any GPS views showing his presence and location in relation to that

9   of the defendants prior to and at the time of the incident and the times that defendants were at

10  such locations.   Again plaintiff must provide to this court a properly completed subpoena

11  directed to the Shasta County Public Defender within fourteen (14) days.   His motions for

12  subpoenas duces tecum to be served by this court on non-parties are otherwise denied.

13  Plaintiff's Motions for Reconsideration

14          In seeking reconsideration of a court order (docket # 55), plaintiff appears to be

15  asking for the district judge to reconsider the April 23, 2012, ruling of the undersigned, denying

16  plaintiff's motion to compel defendants to answer deposition questions, his motion for an order

17  compelling discovery and his requests for appointment of counsel.  See docket # 45.  The motion

18  is inapposite in seeking a ruling by a district judge inasmuch as, the parties having consented to

19  the jurisdiction of the undersigned, it is the undersigned who sits as the district judge in this

20  matter.  In a second motion for reconsideration (docket # 60), plaintiff seeks reconsideration of

21  the court's order, filed on May 1, 2012, denying plaintiff's motion to compel discovery responses

22  as moot and denying his motion for an extension of time of the discovery deadline.  See docket #

23  54.

24          *Standards For Motions To Reconsider*

25          Although motions to reconsider are directed to the sound discretion of the court,

26  Frito-Lay of Puerto Rico, Inc. v. Canas, 92 F.R.D. 384, 390 (D.C. Puerto Rico 1981),

1   considerations of judicial economy weigh heavily in the process.  Thus Local Rule 230(j)

2   requires that a party seeking reconsideration of a district court's order must brief the "new or

3   different facts or circumstances [which] were not shown upon such prior motion, or what other

4   grounds exist for the motion."  The rule derives from the "law of the case" doctrine which

5   provides that the decisions on legal issues made in a case "should be followed unless there is

6   substantially different evidence . . . new controlling authority, or the prior decision was clearly

7   erroneous and would result in injustice."  Handi Investment Co. v. Mobil Oil Corp., 653 F.2d

8   391, 392 (9th Cir. 1981); see also Waggoner v. Dallaire, 767 F.2d 589, 593 (9th Cir. 1985), cert.

9   denied, 475 U.S. 1064 (1986).

10         Courts construing Federal Rule of Civil Procedure 59(e), providing for the

11   alteration or amendment of a judgment, have noted that a motion to reconsider is not a vehicle

12   permitting the unsuccessful party to "rehash" arguments previously presented, or to present

13   "contentions which might have been raised prior to the challenged judgment."  Costello v. United

14   States, 765 F.Supp. 1003, 1009 (C.D.Cal. 1991); see also F.D.I.C. v. Meyer, 781 F.2d 1260, 1268

15   (7th Cir. 1986); Keyes v. National R.R. Passenger Corp., 766 F. Supp. 277, 280 (E.D. Pa. 1991).

16   These holdings "reflect[] district courts' concerns for preserving dwindling resources and

17   promoting judicial efficiency."  Costello, 765 F.Supp. at 1009.

18         *Discussion*

19         As to his first motion for reconsideration, plaintiff appears to take issue only with

20   the portion of the April 23, 2012 order denying his request to serve a subpoena duces tecum upon

21   non-parties.  Plaintiff references that the blank subpoena forms the court ordered to be provided

22   to him by order filed on February 15, 2012, in response to his request for such forms should have

23   been signed by the clerk or a judge.  Of course, to the extent that plaintiff is seeking

24   reconsideration of the Feb. 15th order, it is untimely.  On the other hand, to the extent that the

25   Clerk of the Court failed to provide plaintiff with blank subpoena forms that were unsigned, this

26   runs afoul of Fed. R. Civ. P. 45(a)(3), which states in relevant part, "[t]he clerk must issue a

1  subpoena, signed but otherwise in blank, to a party who requests it."  Because this deficiency has

2  been addressed above in response to one of plaintiff's multiplicity of motions as to this matter,

3  the court will deny the motion for reconsideration of the April 23, 2012, order as moot.

4  Similarly, for the reason that plaintiff's arguments are subsumed within and addressed in the

5  adjudication of other of his motions addressed above, the court will also deny his second motion

6  for reconsideration as moot.

7        Defendants filed a motion for summary judgment on September 10, 2012, to

8  which, by order, filed on October 11, 2012, the undersigned granted plaintiff 60 days to file an

9  opposition.  In light, however, of the further discovery ordered herein, the court will now vacate

10  the motion without prejudice, pursuant to Fed. R. Civ. P. 56(d), until such time as defendants file

11  a notice to the court of having served the further discovery responses.  At such time, defendants

12  may simultaneously re-notice their motion for summary judgment but will not need to re-file the

13  substantive motion itself.

14        Accordingly, IT IS ORDERED that:

15        1.  Plaintiff's motion for reconsideration, filed on May 4, 2012 (docket # 55), of

16  the order filed on April 23, 2012 (docket # 45), is denied as moot.

17        2.  Plaintiff's motion for reconsideration, filed on May 14, 2012 (docket # 60), of

18  the order filed on May 1, 2012 (docket # 54), is denied as moot.

19        3.  Plaintiff's motion for the court to provide subpoenas duces tecum to serve non-

20  parties, filed on April 23, 2012 (docket # 47), is granted, and the Clerk of the Court is to provide

21  blank subpoenas to plaintiff, which are signed in conformance with Fed. R. Civ. P. 45(a)(3);

22        4.  Plaintiff's three motions to compel discovery, filed on May 9, 2012 (docket #

23  57, docket # 58 & docket # 59) are denied in part and granted in part as set forth above;

24        5.  Plaintiff's motion to compel production, filed on May 14, 2012 (docket # 61),

25  is denied in part and granted in part, as set forth above;

26  \\\\\

1          6.   Defendants must file any protective order with respect to the redacted

2    production granted within 14 days, following the issuance of which, defendants must produce

3    any such records of defendants within 21 days thereafter;

4          7.   Defendants' motion for summary judgment, filed on September 10, 2012

5    (docket # 64), is vacated from the court's calendar, pursuant to Fed. R. Civ. P. 56(d), subject to

6    being re-noticed immediately upon proof filed in this court of defendants having served the

7    discovery responses as directed above.

8    DATED: November 19, 2012

9

10                              /s/ Gregory G. Hollows

11                   UNITED STATES MAGISTRATE JUDGE

12

13

14   GGH:009
     fraz1351.ord7

15

16

17

18

19

20

21

22

23

24

25

26