UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATTHEW LUCAS FRAZIER,

    Plaintiff,

v.

REDDING POLICE DEPT., et al.,

    Defendants.

No.  2:11-cv-1351 AC P

ORDER

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief pursuant to 42 U.S.C. § 1983.  The parties have consented to the jurisdiction of the magistrate judge.  ECF Nos. 4, 5, 25.  Pending before the court is defendants' motion for summary judgment.  ECF No. 96.  Plaintiff filed an opposition (ECF Nos. 97-100) and defendants replied (ECF No. 102).  Because defendants did not provide plaintiff the requisite contemporaneous Rand notice pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), the court did so (ECF No. 105), permitting plaintiff to supplement his opposition, which he did (ECF No. 106).  The motion has thus been fully briefed.[1]

////

---

[1] After the pending motion was submitted, plaintiff has continued to make reference to information he claims has been withheld from him regarding a G.P.S. unit recording.  ECF Nos. 111, 112.  This matter has been previously addressed and will not be revisited.

1                            OVERVIEW OF THE CASE

2         This case proceeds on the basis of the Second Amended Complaint, ECF No. 13, which
3  alleges the use of excessive force by defendants Redding Police Department, Officer Rhoads and
4  Officer Zufall.[2]  Plaintiff alleges that on September 26, 2010, he was assaulted by vigilantes who
5  thought that he was a rapist, child molester and/or ex-gangmember.  As plaintiff ran to escape the
6  armed assailants, he saw a police patrol car and attempted to flag it down for assistance.  Officer
7  Rhoads jumped out of his car, pepper-sprayed plaintiff without cause, and forced plaintiff to lie
8  on the ground.  Defendant Rhoads told plaintiff to "shut up" when plaintiff told him he had been
9  attacked, and kneed plaintiff repeatedly in the back.  When plaintiff looked back to say he had not
10 done anything, defendant Rhoads punched him in the face, causing plaintiff a black eye.  Officer
11 Zufall arrived and handcuffed plaintiff's right hand while defendant Rhoads pinned plaintiff's left
12 hand down to the ground, causing an abrasion on the back of his left hand.  Plaintiff also received
13 abrasions to his knees and arms.  Defendant Rhoads then pulled plaintiff up from the ground
14 roughly by the handcuffs, causing a rip in his left shoulder muscle and tendon.  Defendant Rhoads
15 threw plaintiff in the back of defendant Zufall's car, hitting plaintiff's head as he experienced a
16 bout of asthma from the pepper spray.  When plaintiff arrived at the jail, he had to be transported
17 to the hospital for treatment in order to be medically cleared for jail.  Plaintiff seeks money
18 damages.  ECF No. 13 at 1-2, 8.

19                         MOTION FOR SUMMARY JUDGMENT

20        Defendants move for summary judgment, contending that: (1) plaintiff's claim of
21 excessive force against defendant Rhoads is barred; (2) defendant Rhoads' use of force against
22 plaintiff was reasonable as a matter of law and Rhoads is entitled to qualified immunity; (3)
23 plaintiff has failed to establish facts sufficient to constitute a claim of excessive force against
24 defendant Zufall; (4) plaintiff is unable to allege facts sufficient to constitute a claim against
25 defendant City of Redding.  Memorandum of Points and Authorities in Support of Defendants'
26 Motion for Summary Judgment (MSJ) (ECF 96-1) at 3-10.

27

28 ---
[2]  Defendants Porter and Williams have been dismissed.  ECF No. 14.

I.      Legal Standard for Rule 56 Motions

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed.R.Civ.P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

1   admissible discovery material, in support of its contention that the dispute exists. See
2   Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate
3   that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under
4   the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.
5   Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the
6   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
7   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).
8        In the endeavor to establish the existence of a factual dispute, the opposing party need not
9   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
10  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
11  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
12  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' "
13  Matsushita, 475 U.S. at 587 (citations omitted).
14       "In evaluating the evidence to determine whether there is a genuine issue of fact," the
15  court draws "all reasonable inferences supported by the evidence in favor of the non-moving
16  party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir.2011). It is
17  the opposing party's obligation to produce a factual predicate from which the inference may be
18  drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd,
19  810 F.2d 898, 902 (9th Cir.1987).  Finally, to demonstrate a genuine issue, the opposing party
20  "must do more than simply show that there is some metaphysical doubt as to the material facts....
21  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving
22  party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).
23       In applying these rules, district courts must "construe liberally motion papers and
24  pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly."
25  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.2010).  Plaintiff has been provided notice of the
26  requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure,
27  as required by Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), Klingele v.
28  Eikenberry, 849 F.2d 409 (9th Cir.1988), and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012). ECF

Nos. 20, 105.

## II. Factual Record

### A. Undisputed Facts

The following facts are undisputed:[3]

- Plaintiff was a parolee who had been residing at the Americana Hotel in Redding at the time of the September 26, 2010 incident at issue.  ECF No 96-6, Plaintiff's Deposition ("Pl. Dep.") at pages 6 - 8 (ECF No. 96-6).
- Defendant Rhoads was, at the relevant time, a police officer for City of Redding.  ECF 96-4, Declaration of Jason Rhoads ("Rhoads Decl.") at ¶¶2-3.
- Defendant Rebecca Zufall was, at the relevant time, a City of Redding police officer.
- Defendant Rhoads was on duty on September 26, 2010 at 6:01 p.m. when he heard a police radio call about a fight in progress in downtown Redding at or around the Stardust Motel on Pine Street.  ECF No. 96-4, Rhoads Decl. at ¶ 3.
- When Officer Rhoads arrived at the scene he observed petitioner running across Pine Street into the parking area of a former Chevron station at the corner of Pine and Shasta Streets.  ECF No. 96-4, Rhoads Decl. at ¶ 4, 6; ECF No. 96-6, Pl. Dep. at 39-41.
- Plaintiff was arrested after being pepper-sprayed by Rhoads.
- Plaintiff was charged with two counts of violating Cal. Pen. Code § 69 (obstructing or resisting an officer), and two counts of violating Cal. Pen. Code § 422 (making criminal threats).  ECF No. 96-5, Declaration of Gary Brickwood at ¶¶ 2-3, Exhibits 1 (first amended information in Shasta County Superior Court) and 2 (verdict form copies).[4]
- Plaintiff was convicted on all counts on April 22, 2011.  (Brickwood Decl., Ex. 2).
- A self-described alcoholic, plaintiff had chugged a whole, medium-sized bottle of vodka shortly before the events related to his arrest.  ECF No. 96-6, Pl. Dep. at 14-15; ECF 100

---

[3] Although plaintiff characterizes some of these facts as disputed, there is no conflicting evidence on these points.

[4] Defendants ask that judicial notice be taken of the first amended information at Ex. 1 and the verdict forms at Ex. 2.  The request is granted.  A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1     (plaintiff's statement of disputed facts) at 57 (police reports submitted by plaintiff).

2  • Plaintiff is 6' 3" and 230 lbs. He admits that he has been diagnosed as ADHD and
3     schizophrenic, and describes himself as bi-polar. ECF No. 96-6, Pl. Dep. at 17, 19-20, 57,
4     60.

5  • Plaintiff testified that he took Klonipin, Vistaril, Lamictal and Wellbutrin for his conditions
6     daily and had taken them on the date of the incident (in addition to the alcohol). ECF No.
7     96-6, Pl. Dep. at 16.

8     B.  Disputed Facts

9     In an attempt to demonstrate that there are no disputed facts requiring trial, defendants
10 characterize as undisputed the "facts" that plaintiff "alleges (and testified)" to his version of
11 events. See ECF No. 96-2 (Defendants' Separate Statement of Undisputed Facts). Because the
12 declaration of Officer Rhoades and the police reports contained in the record directly conflict
13 with petitioner's deposition testimony regarding the underlying historical facts, the undersigned
14 considers these historical facts to be disputed.

15        1.  Plaintiff's Account Of Arrest

16 • Plaintiff alleges (and has testified) that he encountered Officer Rhoads as he was fleeing
17    from armed assailants and in fear for his life. ECF No. 96-6, Pl. Dep. at 22-23, 35-36, 38,
18    47-48.

19 • Plaintiff stopped running and tried to flag down Rhoads' vehicle with his "arms up in a Y."
20    Id. at 42.

21 •  As Rhoads got out of the patrol car, plaintiff yelled several times that the guys at the
22    Americana were trying to get him. Id. at 44, 47.

23 • When Rhoads ordered plaintiff to stop, he did so and automatically put his hands up. Id. at
24    40, 44-45.

25 • Rhoads pepper-sprayed plaintiff although plaintiff was neither moving nor disobeying. Id.

26 • Plaintiff went to the ground, agitated and having difficulty breathing, all the time yelling "I
27    didn't do anything." Id. at 47.

28 • Rhoads detained plaintiff on the ground with a knee in the small of his back, kneeing him

1   in the "lower back very many times." Id. at 49-50.

2   • When plaintiff turned his head and yelled to defendant Rhoads, "Why? I didn't do
3     anything," Rhoads hit plaintiff in the face and ground his face into the ground for about 30
4     seconds until defendant Officer Zufall came to help place him in handcuffs. Id. at 49, 51-
5     53, 55-56.

6   • Officer Rhoads lifted plaintiff roughly to his feet by his left arm, which hurt plaintiff's left
7     shoulder. Id. at 57-58.

8   • An individual identified as Marc Messenger was at the "Hevanly Doughnut Shop" on
9     September 26, 2010 and observed plaintiff on the ground "with two female officers and
10    one male officer beating on Mr. Frazier." ECF No. 106; ECF No. 22 at 7 (Messenger
11    Decl.).

12      2.   Defendant Rhoads' Account Of Arrest

13  • Plaintiff did not attempt to flag down Rhoad's patrol car, and continued to run away when
14    Rhoads arrived at the scene. ECF No. 100, INT. 9 Response at 20; see also, ECF No. 96-4,
15    Rhoads' Decl. at ¶ 4.

16  • Rhoads believed plaintiff may have been involved in the fight that was the subject of the
17    radio call. ECF No. 96-4, Rhoads Decl. at ¶ 5.

18  • When Rhoads stopped his patrol car at the entrance of the gas station on the corner of
19    Shasta and Pine Streets, plaintiff stopped and turned back to him, began shouting and
20    walking rapidly back toward him, acting very agitated, "clenching his fists" and
21    "shouting," but Rhoads could not understand him. ECF No. 96-4, Rhoads' Decl. at ¶ 7.

22  • Plaintiff continued to behave in an agitated manner and to walk rapidly towards Rhoads,
23    despite repeated directions to stop. ECF No. 96-4, Rhoads' Decl. at ¶ 7.

24  • In response to plaintiff's refusal to stop and fearing danger to himself, Rhoads used the
25    pepper spray in the manner he had been trained, spraying plaintiff in the face in one burst
26    from an approximate distance of six feet. ECF No. 96-4, Rhoads' Decl. at ¶ 8.

27  •  Plaintiff stopped "almost immediately" after being sprayed, was ordered get on the ground
28    and "did so without further resistance." ECF No. 96-4, Rhoads' Decl. at ¶ 8.

7

- Plaintiff was handcuffed "in a usual and customary manner," did not resist the handcuffing procedure, and required "no unusual or unnecessary force or effort" on his part to effect the handcuffing while plaintiff was on the ground. ECF No. 96-4, Rhoads' Decl. at ¶ 9.
- Rhoads did not hit plaintiff in the eye or grind his face into the ground or knee him in the back. Id., INT. 11-13 at 21.
- Rhoads neither struck plaintiff nor used other force while plaintiff was on the ground, but did use his "knee or lower leg to hold [plaintiff] in place on the ground while his hands were handcuffed behind his back." This is a "usual and customary procedure" in which a police officer positions himself for his own safety when handcuffing a person who is face down on the ground. ECF No. 96-4, Rhoads' Decl. at ¶ 9.
- Rhoads observed that plaintiff had abrasions before he was pepper-sprayed, the same abrasions that Rhoads saw on him after plaintiff had been placed in the patrol car. Id., INT. 14 at 21; ECF No. 96-4, Rhoads Decl. at ¶ 5.

### III. Summary Judgment as to Defendant Rhoads

#### A. Application of Heck v. Humphrey

Defendants argue that plaintiff's excessive force claims against defendant Rhoads are barred by Heck v. Humphrey, 512 U.S. 477 (1994). ECF No. 96-1 at 4-5. Under Heck, a prisoner may not proceed on a claim for damages under § 1983 if a judgment favoring plaintiff "would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487. In such a case, plaintiff is foreclosed from proceeding absent proof that the conviction or sentence has been reversed, expunged or invalidated. Id. at 486-487. However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ." Id. at 487. As an illustration of the rule's application, the Heck Court explained that an individual convicted of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest, would be barred from bringing a damages claim for unlawful arrest. Id. at 487 n.6. That result is compelled by the fact that plaintiff, in order to prevail on his § 1983 claim, would have to negate an element of his conviction offense: the lawfulness of the arrest. Id.

When a plaintiff bringing an excessive force claim has been convicted of resisting arrest, application of the Heck bar turns on the relationship between the arrest that has been adjudged lawful in the criminal case[5] and the use of force alleged to have violated plaintiff's rights. For example, an "allegation of excessive force by a police officer would not be barred by Heck if it were distinct temporally or spatially from the factual basis for the person's conviction." Beets v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012); see also Sanford v. Motts, 258 F.3d 1117, 1120 (9th Cir. 2001) ("[e]xcessive force used after an arrest is made does not destroy the lawfulness of the arrest"). Similarly, Heck does not bar an excessive force claim based on allegations that the force used was unreasonable in relation to the degree of resistance to arrest. Hooper v. County of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011). Such a claim, if proven, would not imply the invalidity of a conviction for resisting arrest. Id. In sum, Heck does not bar claims against police for excessive force arising from conduct independent of the facts giving rise to a plaintiff's prior conviction. Smith v. City of Hemet, 394 F.3d 689, 698-99 (9th Cir.) (en banc), cert. denied, 545 U.S. 1128 (2005).[6]

On the other hand, a § 1983 action must be dismissed if the criminal conviction stands and arises "out of the same facts . . . and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought. . . ." Beets, 669 F.3d at 1042 (internal citations and quotation marks omitted) (barring plaintiff's § 1983 claim for excessive force when decedent killed by officer but accomplice convicted of aiding and abetting assault on peace officer). Where the alleged wrongful conduct that serves as the basis of the § 1983 claim is very "closely interrelated" with the act for which plaintiff was convicted, the claim is Heck-barred. Cunningham v. Gates, 312 F.3d 1148, 1154 (9th Cir. 2002) (applying Heck bar where there was no break between the plaintiff's provocative act of firing on the police and the police response

---

[5] The lawfulness of an arrest is generally an element of the offense of resisting arrest. See Heck, 512 U.S. at 487 n.6.

[6] See also Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996) (finding that a successful § 1983 claim for excessive force would not necessarily imply invalidity of plaintiff's arrest or conviction for assault with a deadly weapon). The plaintiff in Smithart had been convicted of assault with a deadly weapon for driving his truck at the defendant law enforcement officers. His excessive force claim was based on allegations that the defendants beat him after he got out of the truck.

1  that he claimed was excessive).

2  Application of Heck, as the foregoing authorities demonstrate, is a highly fact-dependent
3  inquiry that turns on the precise factual basis for the conviction. In the case at bar, plaintiff was
4  convicted of violating Cal. Penal Code § 69 (resisting or obstructing an officer) and § 422
5  (criminal threats). Defendants seek application of the Heck bar, but rely entirely on the bare fact
6  of the convictions and on the statutory language defining the crimes, without providing any
7  information regarding the factual basis for plaintiff's convictions. See ECF No. 96-1 (points and
8  authorities) at 4-6. Defendants have completely failed to meet their burden as the moving party.
9  See Sanford, 258 F.3d at 1119 (placing burden of establishing applicability of Heck bar on
10 defendants).

11 Moreover, the police reports in the record suggest that the criminal charges against
12 plaintiff may have been brought on the basis of his conduct *after* the alleged use of excessive
13 force by Officer Rhoads. The criminal threats charge was plainly based on threatening statements
14 that plaintiff made to the officers at the hospital following the events at issue in the § 1983 claim.
15 See ECF No. 100 at 41 (charging sheet); 52-54 and 56 (Suppl. Crime Reports). There is no
16 suggestion in the reports that any criminal threats may have been made during or at the scene of
17 the arrest itself. See id. Because the statements at the hospital are distinct from the pepper-spray
18 incident in substance, time and place, the validity of plaintiff's convictions under Cal. Penal Code
19 § 422 are not implicated by his 1983 claim. See Beets, 669 F.3d at 1042.

20 Cal. Penal Code § 69, although referred to by defendants here as a "resisting arrest"
21 offense, encompasses a broad range of attempts to prevent an officer from performing a legal
22 duty as well as direct resistance by force or threats to an officer's performance of his or her duty.[7]
23 People v. Carrasco, 163 Cal. App. 4th 978, 984 (Cal. App. 2008); People v. Smith, 57 Cal. 4th

---

[7] Cal. Penal Code § 69 provides as follows: "Obstructing or resisting executive officers in performance of their duties; attempts; threats; violence; punishment. Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."

1    232, 159 Cal. Rptr.3d 57, 63 (Cal. 2013).  Where a § 69 charge is based on alleged resistance of

2    arrest, the lawfulness of the arrest is an element of the offense.  Nuno v. County of San

3    Bernardino, 58 F.Supp.2d 1127, 1133 (C.D.Cal.1999).  However, it is far from clear that

4    plaintiff's prosecution under § 69 was in fact predicated on the pepper-spray and handcuffing

5    incident that gives rise to his excessive force claim.

6    It is very clear that plaintiff engaged in conduct that could be characterized as obstructive

7    and/or threatening throughout his transportation from the scene of his arrest to the jail, at the jail,

8    at the hospital, and upon return to the jail from the hospital.  See ECF No. 100 at 52-57.

9    Defendant Rhoads' report specifically states that he requested Penal Code § 69 charges on the

10   basis of the threats made at the hospital, rather than on the basis of the arrest.  Id. at 54.  As to the

11   arrest itself, Rhoads' declaration specifies that after plaintiff was pepper-sprayed he complied

12   with and did not resist being placed under arrest.  ECF No. 96-4 (Rhoads Decl.) at ¶¶ 8-9.[8]  On

13   this record, there is no basis for a conclusion that plaintiff's convictions under Pen. Code § 69

14   were based the same facts put in issue by his excessive force claim.

15   For these reasons, defendant Rhoads' assertion of the Heck bar is rejected.

16   B.  Qualified Immunity & the Fourth Amendment

17   Defendant Rhoades seeks summary judgments on the closely related grounds that his use

18   of force was reasonable as a matter of law and that he is entitled to qualified immunity.  In

19   resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts,

20   when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated

21   a constitutional right, and (2) whether a reasonable officer could have believed that his conduct

22   was lawful, in light of clearly established law and the information the officer possessed.

23   Anderson v. Creighton, 483 U.S. 635 (1987).  These questions may be addressed in the order that

24   makes the most sense given the circumstances of the case.  Pearson v. Callahan, 555 U.S. 223

25   (2009).

---

[8] "Mr. Frazier stopped almost immediately in response to the pepper spray.  He was ordered to go to the ground and he did so without further resistance. . . .  Mr. Frazier did not resist the handcuffing procedure and no unusual or unnecessary force or effort was necessary in order to accomplish the handcuffing of Mr. Frazier while on the ground."  Id.

11

An excessive force claim arising in the context of an arrest invokes the protections of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394 (1989). Accordingly, the Fourth Amendment reasonableness standard applies. Pierce v. Multnomah County, Oregon, 76 F.3d 1032, 1043 (9th Cir.), cert. denied, 519 U.S. 1006 (1996). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (internal citations omitted. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97.

The ultimate question is whether the force used was objectively reasonable in light of the particular facts and circumstances. Id. at 397; see also Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir.2003) (the amount of force applied must be balanced against the need for that force under the circumstances). The pertinent circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Graham factors are not exclusive, as objective reasonableness depends on the totality of the circumstances. Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).

Defendants are not entitled to summary judgment "if the evidence, reviewed in the light most favorable to [plaintiff] could support a finding of excessive force." Smith v. City of Hemet, 394 F.3d at 701. "'Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law . . . should be granted sparingly' in cases involving claims of excessive force." Gregory v. County of Maui, 523 F.3d 1103, 1106 (9th Cir. 2008) (quoting Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir.2003)); Santos v. Gates, 287 F.3d 846, 852 (9th Cir.

12

1  2002) (same); see also Smith v. City of Hemet, 394 F.3d at 701 (quoting Liston v. County of
2  Riverside, 120 F.3d 965, 976 n. 10 (9th Cir.1997) ("[w]e have held repeatedly that the
3  reasonableness of force used is ordinarily a question of fact for the jury")); Chew v. Gates, 27
4  F.3d 1432, 1440 (9th Cir. 1994) ("[b]ecause questions of reasonableness are not well-suited to
5  precise legal determination, the propriety of a particular use of force is generally an issue for the
6  jury.")

7     It is undisputed that plaintiff, very shortly before his encounter with defendant Rhoads,
8  had rapidly consumed a copious amount of vodka after which he became engaged in an
9  altercation with several individuals. It is also not in dispute that Officer Rhoads heard a police
10 radio call about a fight in progress at or around the Stardust Motel in downtown Redding. It is
11 not disputed that plaintiff was running when he first encountered Rhoads' patrol care. However,
12 it is disputed whether or not plaintiff attempted to flag Rhoads down before the patrol car
13 stopped. It is also disputed whether, after the patrol car stopped, plaintiff turned and rapidly
14 advanced toward defendant Rhoads or simply stood still a short distance away. It is undisputed
15 that plaintiff was shouting and that defendant Rhoads pepper-sprayed him in a single burst, after
16 which plaintiff immediately dropped to the ground as ordered. It is also undisputed that plaintiff
17 did not resist arrest after being pepper-sprayed. It is not disputed that plaintiff lifted his head
18 from the ground and turned his head toward defendant Rhoads once defendant Rhoads had his
19 knee on plaintiff. Plaintiff admits to having lifted his head and to have spoken loudly to
20 defendant Rhoads before his head was pushed to the ground. Thus, it is undisputed that the
21 defendant pushed plaintiff's head back down but disputed as to whether or not defendant Rhoads
22 proceeded to grind plaintiff's face into the ground. It is disputed whether Rhoads hit plaintiff in
23 the face. It is disputed whether defendant Rhoads kneed plaintiff in the back repeatedly as
24 plaintiff lay prone before he was handcuffed. In sum, both the degree of force used and the
25 circumstances relevant to the reasonableness of that force are in dispute.

26     The "most important" of the Graham factors is whether a subject or suspect posed an
27 "immediate threat to the safety of the officers or others." Mattos v. Agarano, 661 F.3d 433, 441
28 (9th Cir. 2011) (quoting City of Hemet, 394 F.3d at 702); Chew v. Gates, 27 F.3d at 1441.

However, in considering whether there was an immediate threat, it is not enough for there to be "a simple statement" by the officer to the effect that he feared "for his safety or the safety of others;" rather, "there must be objective factors to justify such a concern." Mattos, 661 F.3d at 441-42 (quoting Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001)). Here, the threat posed by plaintiff immediately prior to the use of pepper-spray turns on disputed facts: whether he attempted to flag down the patrol car for assistance, whether he failed to stop as ordered, whether he charged in a menacing manner, and whether he appeared to be out of control. If plaintiff had stopped and was not approaching Officer Rhoads, as he alleges, the use of pepper-spray to subdue him would not have been objectively reasonable and Officer Rhoades could not reasonably have believed such use was permissible. See Headwaters Forest Defense v. County of Humboldt, 276 F.3d 1125, 1130 (9th Cir.), cert. denied, 537 U.S. 1000 (2002); see also, LaLonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir. 2000).

The degree of force that was used following the pepper-spraying is also in dispute. If Officer Rhoades hit plaintiff in the face and ground his face into the concrete while plaintiff lay restrained and unresisting on the ground, then Rhoades may be liable. See Graham, 490 U.S. at 397; LaLonde, 204 F.3d at 960 (Fourth Amendment permits police to "use only such force as is objectively reasonable under the circumstances."); Blankenhorn v. City of Orange, 485 F.3d 463, 480-81 (9th Cir. 2007) (summary judgment inappropriate where plaintiff was punched during arrest). Moreover, if Officer Rhoades did what plaintiff says he did, he could not reasonably have believed that such force was permissible. See Blankenhorn, 485 F.3d at 480 (no qualified immunity where officer punched arrestee); Jones v. Buchanan, 325 F.3d 520, 533-34 (4th Cir. 2003) (collecting cases denying qualified immunity where force was allegedly used after arrestee was secured and compliant).

When the facts of this case are considered in the light most favorable to plaintiff, a Fourth Amendment violation is established. Moreover, a reasonable officer could not have believed that the use of force plaintiff describes, under the circumstances plaintiff describes, was constitutionally acceptable. Credibility determinations may not be made on summary judgment. Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1036 (9th Cir. 2005). Because the

facts necessary to Fourth Amendment reasonableness analysis are disputed, a jury must determine those facts. For the same reason, defendant Rhoades is not entitled to qualified immunity. See Torres v. City of Los Angeles, 548 F.3d 1197, 1212 (9th Cir. 2008) (qualified immunity inappropriate in light of factual disputes material to reasonableness of officers' actions), cert. denied, 556 U.S. 1183 (2009); Santos v. Gates, 287 F.3d at 853 (summary judgment inappropriate in light of factual disputes material to reasonableness of officers' actions). The motion for summary judgment as to defendant Rhoads must be denied.

### IV.     Summary Judgment As To Defendant Zufall

Plaintiff has alleged and testified that defendant Zufall arrived at the scene and helped defendant Rhoads handcuff him, but has presented no evidence that she participated in the allegedly excessive use of force. Plaintiff relies on the bare-bones declaration of the individual identified as Marc Messenger, who saw plaintiff lying prone "with two female officers and one male officer beating on [him]." ECF No. 106; ECF No. 22 at 7. However, plaintiff himself does not dispute that defendant Zufall had no involvement in his arrest beyond assisting in his handcuffing.

Plaintiff argues vaguely that defendant Zufall "allowed Rhoad[s] to do what he did" (ECF No. 106 at 5), but the evidence shows that she was in a separate patrol vehicle from that of defendant Rhoads and not at the arrest scene until after plaintiff had been forced to the ground. Plaintiff contends claim that the handcuffs were placed on him too tightly, and presents defendant Zufall's affirmative response to an interrogatory asking whether she checked the tightness of his handcuffs. ECF No. 100 at 12-13 INT 6. In any event, plaintiff testified that he did not suffer cuts or bruises on his wrists from the handcuffs, only some "red marks." ECF No. 96-5, plaintiff's Dep. at 54. Further, when he complained at the hospital that the cuffs were too tight, they were loosened. Id. at 54-55.

In short, plaintiff presents insufficient evidence to substantiate his claim that defendant Zufall subjected him to excessive force in violation of his Fourth Amendment rights. In other words, plaintiff has failed to demonstrate the existence of a material factual dispute regarding the reasonableness, in light of all the circumstances, of force use by defendant Zufall. See Graham v.

1   Connor, 490 U.S. at 397.  Defendant Zufall is therefore entitled to summary judgment.

2        V.     Summary Judgment As To The City of Redding

3        "A municipality may be held liable under § 1983 'when execution of a government's
4   policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be
5   said to represent official policy, inflicts the injury. . . .'" Jackson v. City of Bremerton, 268 F.3d
6   646, 653 (9th Cir. 2001) (quoting Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978)).
7   That is, plaintiff can recover from defendant City if and only if he can show that any injury he
8   suffered "was inflicted pursuant to city policy, regulation, custom, or usage." Chew v. Gates, 27
9   F.3d at 1444 (citing Monell, 436 U.S.at 690–91).  "City policy 'causes' an injury where it is 'the
10  moving force' behind the constitutional violation, Monell, 436 U.S. at 694 [] or where 'the city
11  itself is the wrongdoer.'" Chew, 27 F.3d at 1444 (citing Collins v. City of Harker Heights, Tx.,
12  503 U.S. 115, 122 (1992)).  Plaintiff can also recover against defendant City if he can show that,
13  even if the City's use of force policy itself was "facially constitutional," it was the City's
14  deliberate indifference that led to its employee's constitutional violation. Gibson v. County of
15  Washoe, Nev., 290 F.3d 1175, 1186 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003).

16       Plaintiff seeks to hold the City liable on the theory that that the City and its police
17  department engaged in a cover-up of the defendant officers' actions.  Plaintiff asserts that this
18  cover-up represents a pattern by the City.  ECF No. 99 at 13.  Plaintiff has presented no evidence
19  to raise a triable issue regarding an unconstitutional pattern, practice, or policy.

20       Plaintiff's allegations against the city are limited to his own case.  He alleges that all
21  officers lied in their "filed state documents." Id.  Plaintiff makes repeated references to a missing
22  tape, and alleges police entrapment. Id.  To the extent that plaintiff seeks present evidence that
23  would undermine his present conviction,[9] Heck forecloses the claim for the reasons previously
24  discussed.  In dismissing plaintiff's claims against defendants Porter and Williams, the court
25  previously informed plaintiff that he could not maintain claims that the charges against him were
26  based on false statements and manufactured probable cause, absent a showing that his present

---

[9] Plaintiff appears to be attempting to revive claims that his conviction is based on police impropriety.

16

conviction had been reversed or invalidated. ECF No. 14 at 3. Entirely apart from the Heck problem, plaintiff cannot establish municipal liability on a single incident of excessive force. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). As previously noted, plaintiff presents no such proof of an unconstitutional policy.

Plaintiff has failed to produce evidence which raises a genuine issue of fact material to municipal liability. Defendant City of Redding's motion of summary judgment will be granted.

## CONCLUSION

Accordingly, for all the reasons set forth above, IT IS ORDERED that defendants' motion for summary judgment (ECF No. 96) is GRANTED as to defendants Zufall and the Redding Police Department (City of Redding) and DENIED as to defendant Rhoads.

DATED: August 30, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE